# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Parole of RICHARD MCBRAYER.

---

T. H.,

      Appellee,

v

RICHARD MCBRAYER,

      Appellant,

and

MICHIGAN PAROLE BOARD,

      Intervenor-Appellant.

UNPUBLISHED
August 29, 2017

No. 336084
Macomb Circuit Court
LC No. 2016-001586-AP

---

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Intervenor-Appellant, the Michigan Parole Board (the Board), appeals by leave granted[1] a circuit court order reversing its grant of parole to appellant Richard McBrayer. The circuit court order was entered after appellee appealed by delayed leave granted the Board's grant of parole to McBrayer. We affirm.

Defendant received two concurrent sentences of 20 to 40 years' imprisonment for first-degree criminal sexual conduct (CSC-1), MCL 750.520b(1)(b). He was originally charged with five counts of CSC-1 and ended up pleading guilty to two of those counts. Defendant's convictions arose from the sexual abuse of his stepdaughter. The abuse was alleged to have started in 1990 and continued until September 1993; the victim was between 12 and 14 years old

---

[1] *In re Parole of McBrayer*, unpublished order of the Court of Appeals, entered January 18, 2017 (Docket No. 336084). In the order granting leave, this Court also granted the motion of the Michigan Attorney General to file an amicus curiae brief on behalf of appellee. *Id*.

-1-

at the time. Defendant, a former law-enforcement officer and karate instructor, was between 34 and 36 years old. According to the victim, when she turned 12 defendant started sexually penetrating her vaginally, anally, and orally. She stated that defendant raped her on a daily basis and that some of these assaults were aggressive and violent anal rapes. The victim suffered long-term physical injuries and medical problems due to the assaults, along with emotional and mental trauma. The physical injuries included blocked bowels and bleeding of the rectum.

On May 4, 2001, McBrayer pleaded guilty to being out of place in prison on April 24, 2001, when he failed to appear for a healthcare appointment. McBrayer contended that he missed the healthcare appointment because he misread the scheduled time for the appointment. This offense was McBrayer's only major misconduct incident while he was incarcerated.

On March 16, 2015, the Board sent the victim a letter notifying her that it was legally obligated to consider McBrayer for parole and that she had 30 days to contact the Board to make a statement to the Board regarding McBrayer's possible parole.[2] During her interview with the Board, the victim vehemently opposed granting McBrayer parole and described how she still suffered physically and emotionally as a result of McBrayer's actions.

On August 3, 2015, the Board interviewed McBrayer. It then prepared a case summary report (CSR). In the 2015 CSR, the Board found that McBrayer accepted responsibility for his crime. McBrayer planned on moving to Louisiana to live with his nephew upon being granted parole, and he stated that he would find work and that he had no need to be around children. The Board found that this proposed placement was acceptable pending MDOC approval.

The Board voted to grant McBrayer parole on October 15, 2015, with a projected parole date of January 5, 2016. It found that it had reasonable assurances that McBrayer would not become a menace to society or to the public safety. McBrayer's request for transfer to Louisiana was denied by the Interstate Commission for Adult Offender Supervision on December 21, 2015. According to McBrayer's pre-parole form, McBrayer was instead to be placed at "MORE House" in Clinton Township, and he would report to his supervising agent in Roseville.

Appellee appealed the grant of parole in the circuit court, and that court reversed the Board's decision. The circuit court concluded that a 2015 COMPAS[3] risk assessment of

---

[2] The Board voted to deny McBrayer parole in 2009 and 2010. In 2011, the Board granted McBrayer parole; however, the Macomb County Prosecutor appealed this decision, and in 2013 the circuit court reversed the Board's grant of parole. In 2014, the Board again voted to deny McBrayer parole.

[3] As explained by this Court, "COMPAS . . . stands for the 'correctional offender management profiling for alternative sanctions' program. COMPAS is a comprehensive risk and needs assessment system, which takes into account both static information (such as the prisoner's past criminal offenses) and dynamic data (such as the prisoner's evolving attitudes and mental condition). COMPAS is designed to support treatment, programming and case management decisions. The various COMPAS reports describe the offender's risk and criminogenic needs. The fundamental task is to connect the dots among the various factors and develop a more

McBrayer, which showed improvement from his 2013 COMPAS assessment, was dubious, because McBrayer had not completed any additional therapy after 2013. The court further noted that McBrayer still blamed appellee for wanting his attention in his 2015 interview with the Board and also admitted an attraction to 13- and 14-year-olds.

The circuit court also considered McBrayer's October 7, 2015, Qualified Mental Health Professional Evaluation (QMHPE) and concluded that it suffered from "infirmities" because, in the circuit court's view, that QMHPE had taken into account certain improperly-scored sex-offender assessments. The circuit court further found that the 2015 QMHPE had failed to consider McBrayer's "self-imposed need to isolate himself in Louisiana to be away from his victim and other children." The circuit court stated, "McBrayer does not even trust himself to be near [the victim] or other children . . . ." The circuit court concluded that the 2015 QMHPE did not "justify a decision to parole McBrayer." The court noted that McBrayer "did not even follow through [with] his relapse avoidance strategy but has chosen to reside in an area where many children are present . . . . He clearly lacks a suitable and realistic parole plan."

Ultimately, the circuit court concluded that the Board had "violated its duty to consider all of the true facts and circumstances" when it determined whether "McBrayer remained a danger and menace to society" and that the Board had abused its discretion when it granted McBrayer parole because of McBrayer's "present risk of harm and his lack of true rehabilitation[.]"

The Board contends on appeal that the circuit court erred and essentially substituted its own judgment for that of the Board.

"Judicial review of the Board's decision to grant parole is limited to the abuse-of-discretion standard." *In re Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). "An abuse of discretion occurs when the . . . decision falls outside the range of reasonable and principled outcomes." *Id*.

Generally, "matters of parole lie solely within the broad discretion of the [Board] . . . ." *Id*. at 521 (quotation marks and citation omitted). The Board is to consider a prisoner's sentencing offense when calculating parole scores, but "the Board must also look to the prisoner's rehabilitation and evolution throughout his or her incarceration." *Elias*, 294 Mich App at 544. "A prisoner with a [parole-guidelines] score of +3 or greater merits placement in the high-probability [of parole] category[.]" *Id*. at 518.

The Board may depart from the parole guidelines and deny parole to a prisoner who has a high probability of parole under the parole guidelines if the Board states in writing that there are substantial and compelling reasons for denying parole. *Id*. at 522. In doing so, the Board may rely on both objective facts and subjective findings, such as those related to the prisoner's social attitude. *Id*. at 543-544.

_____

integrated and coherent interpretation of each persons [sic] support needs." *In re Elias*, 294 Mich App 507, 520-521; 811 NW2d 541 (2011) (quotation marks and citation omitted).

" '[A] prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety.' " *Id*. at 522, quoting MCL 791.233(1)(a).

Appellee, as the challenging party, "has the burden to show either that the Board's decision was 'a clear abuse of discretion' or was 'in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation.' " *Elias*, 294 Mich App at 538, quoting MCR 7.104(D)(5).[4] Additionally, "a reviewing court may not substitute its judgment for that of the Board." *Elias*, 294 Mich App at 538-539.

At the outset, we note that McBrayer received a score of +11 under the parole guidelines, and therefore, he had a high probability of parole. The Board was authorized to depart from the parole guidelines only if it found substantial and compelling reasons to do so. There *were* such substantial and compelling reasons in the present case.

We first make note of the powerful evidence provided by the victim during her interview on May 6, 2015. The victim recounted how McBrayer, a former court officer in a state district court, kept her in constant fear, and she stated that she still suffers horribly, including by having panic attacks. She stated that, to this day, she cannot have a natural bowel movement and instead needs physical assistance. She stated that she is very scared that McBrayer will "come after her daughter" out of anger from the victim's having reported him. The victim recounted an instance when she was in the eighth grade and McBrayer sodomized her so severely that she needed hospitalization; McBrayer came to the hospital with the victim's mother and pretended to offer concern and support. We further note that the victim contracted a sexually transmitted disease from McBrayer.

We fully acknowledge that the nature of the offense is not the most important factor in deciding whether to grant parole, but this case presents a unique situation in that the damage inflicted on the victim is coupled with a professed relapse prevention plan that did not materialize. In the 2014 CSR, it was noted that McBrayer continued to minimize the level of abuse and that his insight was limited. While there evidently was improvement in these areas by the time of the 2015 CSR, McBrayer admitted during his most recent interview with the Board that he had fantasized about the victim and that he was attracted to 13- and 14-year-olds. He also stated that he would like to move to Louisiana. During the interview for his 2015 QMHPE, McBrayer related that he "plans to live in Louisiana with his niece and her husband in an area he reports is appropriately removed from high potential for underage traffic." The QMHPE evaluator indicated, under the heading "Deviant Sexual Interests," that "[t]here is some concern related to deviant sexual interests" and that "part of [McBrayer's] reasoning for planning to parole to Lousiana is to be away from his victim." The evaluator also noted that McBrayer "related having two friends, both former prisoners with sex offenses, with whom he keeps in touch."

---

[4] The court rule cited in *Elias* was subsequently renumbered. The content of that court rule is now at MCR 7.118(H)(3).

Significantly, McBrayer's request for a transfer to Louisiana was denied because the resident at the address provided by McBrayer stated that she did not know him. McBrayer was instead placed at a facility in Clinton Township and was to report to a supervising agent in Roseville. This meant he was placed relatively near to the victim. In effect, this derailed McBrayer's plans to live away from the victim and in an area "appropriately removed from high potential for underage traffic."[5] The Board did not adequately consider this factor and it clearly provides a substantial and compelling reason to deny parole. We acknowledge that we are not to substitute our judgment for that of the Board, but here, we are not simply "substituting our judgment." Instead, we are taking into consideration the derailment of McBrayer's plan to stay away from the victim and avoid relapse. This is highly significant information. We decline to delve into the intricacies of whether the trial court improperly recalculated certain assessment scores because we find that, even assuming that the court *did* miscalculate the scores, the court nevertheless correctly evaluated the effect of the derailment of McBrayer's "Louisiana plan." The various scores did not take into account the nuances of McBrayer's severe abuse of the victim coupled with the failure of his professed plan to prevent relapse and stay "away from his victim." The Board claims that a therapy termination report indicates that McBrayer had an adequate relapse-prevention plan in place. It is simply not reasonable, however, for the Board to rely on this report, which is from *2010*. At any rate, we note that this report also stated that McBrayer had "ongoing issues and areas of work that have only just begun, which will need to be pursued once he is released from prison." We affirm the decision of the circuit court.

Affirmed.

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[5] We note that the Board voted to grant parole before the denial of McBrayer's request for the transfer but the actual parole release occurred after the denial.